UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY LEE LEWIS | ] | |
|     Petitioner, | ] | |
| | ] | |
| v. | ] | No. 2:11-0049 |
| | ] | Judge Trauger |
| DAVID MILLS, WARDEN | ] | |
|     Respondent. | ] | |

**M E M O R A N D U M**

The petitioner, proceeding *pro se*, is an inmate at the Northwest Correctional Complex in Tiptonville, Tennessee. He brings this action pursuant to 28 U.S.C. § 2254 against David Mills, Warden of the facility, seeking a writ of habeas corpus.

**A. Background**

In May, 2000, a grand jury in Warren County issued an indictment charging the petitioner with three counts of first degree murder, two counts of felony murder, and one count of aggravated arson. Docket Entry No.23-1 at pgs.8-11.

The State initially intended to seek the death penalty. *Id.* at pgs.15-17. News of the petitioner's arrest and prosecution drew a great deal of attention in the local media. His motion for change of venue was granted and the case was moved to Putnam County for trial. Docket Entry No.23-3 at pg.74. Eventually, the prosecution

1

withdrew its notice of intent to seek the death penalty. *Id.* at pgs.61-64.

After a nine day trial, a Putnam County jury found the petitioner guilty of two counts of facilitation of second degree murder and aggravated arson. Docket Entry No.23-5 at pgs.6-13. The petitioner received consecutive sentences of twenty (20) years for each facilitation count and twenty five (25) years for aggravated arson, giving him an aggregate sentence of sixty five (65) years in prison. *Id.* At pgs.66-68.

On direct appeal, the Tennessee Court of Criminal Appeals affirmed the convictions and sentences. Docket Entry No.24-12. No further discretionary review was sought by the petitioner.

In August, 2004, the petitioner filed a *pro se* petition for post-conviction relief in the Circuit Court of Putnam County. Docket Entry No.24-13 at pgs.5-9. Following the appointment of counsel, an amendment of the petition, and an evidentiary hearing, the trial court denied the petitioner's request for post-conviction relief. *Id.* at pgs.127-133. The Tennessee Court of Criminal Appeals affirmed the denial of post-conviction relief, Docket Entry No.24-20, and the Tennessee Supreme Court declined petitioner's invitation to further review his petition. *Id.*

## B. Procedural History

On April 22, 2011, the petitioner initiated this action with the *pro se* filing of a petition for writ of habeas corpus (Docket

2

Entry No.1). In the petition, the petitioner asserts ten claims for relief. These claims include :

    1) the evidence was insufficient to support the convictions;

    2) it was error for the trial court to allow "inadmissible hearsay testimony regarding an alleged conspiracy and finding that a conspiracy existed and that Petitioner was part of that conspiracy";

    3) the trial judge erred by allowing the petitioner to be cross-examined during a limited purpose jury-out hearing;

    4) a medical expert was improperly allowed to testify to a matter (two killer theory) outside the area of his expertise;

    5) the trial judge erred when he refused to instruct the jury as to an inadequate crime scene investigation and the negligent preservation of evidence;

    6) the trial judge erred when he considered "particularly vulnerable" victims as a sentence enhancing factor; and

    7) petitioner was denied the effective assistance of counsel when his attorney
        a) failed to seek a sequestration of the jury;
        b) failed to object to the application of certain aggravating factors used to enhance his sentence (*Apprendi* claim);
        c) neglected to challenge certain hearsay testimony on confrontation grounds; and
        d) the cumulative effect of these errors served to deprive the petitioner of the effective assistance

of counsel.[1]

Upon receipt of the petition, the Court examined it and concluded that the petitioner had stated a colorable claim for relief. Accordingly, an order (Docket Entry No.5) was entered directing the respondent to file an answer, plead or otherwise respond to the petition. Rule 4, Rules - - - § 2254 Cases.

Presently pending before the Court is respondent's Motion to Dismiss (Docket Entry No.21) the petition, to which the petitioner has filed a Traverse (Docket Entry No.30). Having carefully considered the petition, respondent's Motion to Dismiss, petitioner's Traverse, and the expanded record, it appears that an evidentiary hearing is not needed in this matter. *See* Smith v. United States of America, 348 F.3d 545, 550 (6th Cir. 2003)(an evidentiary hearing is not required when the record conclusively shows that the petitioner is entitled to no relief). Therefore, the Court shall dispose of the petition as the law and justice require. Rule 8(a), Rules - - - § 2254 Cases.

### C. Analysis of the Claims

**1) Withdrawn Claims**

As an initial matter, the Court notes that, in the Traverse, the petitioner has withdrawn from consideration his claim regarding the "particularly vulnerable" enhancement factor (Claim No.6).

---

[1] At trial, the petitioner was represented by Larry Warner, a member of the Cumberland County Bar.

Docket Entry No.30 at pg.17. In addition, the petitioner has withdrawn the claim that counsel had been ineffective for neglecting to challenge certain hearsay testimony on confrontation grounds (Claim No.7c). *Id.* at 21.

**2) Procedurally Defaulted Claims**

A federal district court will not entertain a petition for writ of habeas corpus unless the petitioner has first exhausted all available state court remedies for each claim in his petition. Cohen v. Tate, 779 F.2d 1181, 1184 (6th Cir.1985). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine which promotes comity between the states and federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. Granberry v. Greer, 107 S.Ct. 1671, 1674-1675 (1987). Thus, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to the state courts. Rose v. Lundy, 102 S.Ct. 1198, 1205 (1982). A claim has been fairly presented when the petitioner has raised both the factual and legal basis for his federal claim in the state courts. Fulcher v. Motley, 444 F.3d 791, 798 (6th Cir. 2006). Once his federal claims have been raised in the highest state court available, the exhaustion requirement is satisfied, even if that court refused to consider the claims. Wilson v. Mitchell, 498 F.3d

491, 498-99 (6th Cir. 2007).[2]

The petitioner alleges that the trial judge erred when he allowed hearsay testimony of a conspiracy (Claim No.2), allowed the prosecution to question the petitioner on cross-examination during a limited purpose jury-out hearing (Claim No.3), and allowed a medical expert to testify to a matter outside the scope of his expertise (Claim No.4). These claims were exhausted in the state courts solely as violations of state evidentiary rules and were never offered as instances in which the petitioner's federal rights were violated. *See* Docket Entry No.24-10 at pgs.14-18. Therefore, these claims have not yet been fairly presented to the state courts for review.

Unfortunately, at this late date, state court remedies for any federal claims arising from this alleged misconduct are no longer available. Tenn. Code Ann. § 40-30-102(a) and (c). As a consequence, by way of procedural default, the petitioner has technically met the exhaustion requirement with respect to these evidentiary claims. <u>Alley v. Bell</u>, 307 F.3d 380, 385 (6th Cir. 2002)(if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas corpus review).

---

[2] In Tennessee, a petitioner need only take his claims to the Tennessee Court of Criminal Appeals in order to fully exhaust his available state court remedies. Rule 39, Tenn. Sup. Ct. Rules; <u>Adams v. Holland</u>, 324 F.3d 838 (6th Cir. 2003).

The exhaustion of a claim via procedural default does not, however, automatically entitle a habeas petitioner to federal review of that claim. To prevent a federal habeas petitioner from circumventing the exhaustion requirement in such a manner, the Supreme Court has held that a petitioner who fails to comply with state rules of procedure governing the timely presentation of federal constitutional issues forfeits the right to federal review of those issues, absent cause for the noncompliance and some showing of actual prejudice resulting from the alleged constitutional violations. Gray v. Netherland, 518 U.S. 152, 162 (1996).

A habeas petitioner can not rely on conclusory assertions of cause and prejudice to overcome the adverse effects of a procedural default. Rather, he must present affirmative evidence or argument as to the precise cause and prejudice produced. Lundgren v. Mitchell, 440 F.3d 754, 764 (6th Cir.2006). To demonstrate cause, the petitioner must show that an objective factor external to the defense interfered with his ability to comply with the state procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). To establish prejudice, there must be a showing that the trial was infected with constitutional error. United States v. Frady, 456 U.S. 152, 170-72 (1982).

The petitioner has offered no cause for the failure to exhaust his evidentiary claims in the state courts as issues of federal

7

rather than state law. Nor has he shown prejudice resulting from the alleged evidentiary errors. Consequently, these claims will not support an award of habeas corpus relief. <u>Teague v. Lane</u>, 489 U.S. 288, 297-98 (1989)(denial of a claim is appropriate when the claim was not raised in the state appellate court for review).

3) **Fully Exhausted Claims**

The petitioner's remaining claims, i.e., the insufficiency of the evidence (Claim No.1), the failure to instruct the jury as to an inadequate crime scene investigation (Claim No.5), and the ineffectiveness of counsel (Claim Nos.7a,b and d), were fully exhausted on the merits in the state courts on either direct appeal or during the post-conviction proceedings.

When a claim has been adjudicated on the merits in state court, the state court adjudication will not be disturbed unless it resulted in a decision contrary to clearly established federal law or involved an unreasonable application of federal law in light of the evidence. 28 U.S.C. § 2254(d); <u>Nevers v. Killinger</u>, 169 F.3d 352, 357 (6th Cir.1999). In order for a state adjudication to run "contrary to" clearly established federal law, the state court must arrive at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decide a case differently than the United States Supreme Court on a set of materially indistinguishable facts. To grant the writ for an "unreasonable application" of federal law, the petitioner must show

that the state court identified the correct governing legal principle involved but unreasonably applied that principle to the facts of the case. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). In short, state court judgments must be upheld unless, after an examination of the state court judgment, the Court is firmly convinced that a federal constitutional right has been violated. *Id.* at 529 U.S. 389.

## 3A) Sufficiency of the Evidence

The petitioner claims that the evidence was not sufficient to support the convictions. The right to due process guaranteed to us by the Constitution insures that no person will be made to suffer the onus of a criminal conviction except upon sufficient proof. Sufficient proof has been defined as the "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 443 U.S. 307, 324 (1979). When weighing the sufficiency of the evidence to support a criminal conviction, the Court must view the evidence in a light most favorable to the prosecution. *Id.*

The petitioner was convicted of two counts of facilitation of second degree murder and one count of aggravated arson. Second degree murder is the knowing killing of another. Tenn. Code Ann. § 39-13-210. The facilitation of such a crime requires a showing that the petitioner knowingly furnished substantial assistance to another in the commission of the murder. Tenn. Code Ann. § 39-11-

9

403(a). Aggravated arson is proven by showing that the petitioner committed arson when one or more people were present in the structure set aflame. Tenn. Code Ann. § 39-14-302(a)(1).

Diane Watts, her daughter Jessica, and Jessica's friend, Chelsie Smith, were found dead by firemen responding to a fire at the Watts' home. It was stipulated by the parties that a baseball bat and a torque wrench had been used to assault the victims before the fire was started. Docket Entry No.23-10 at pgs.16-17. Medical testimony suggested that Ms. Watts had been dead before the fire started, *Id.* at pg.58, but that the young girls had died from blunt force trauma and smoke inhalation. *Id.* at pg.46. Fire investigators concluded that the fire was intentionally set and was the result of arson. Docket Entry No.23-12 at pg.116.

Ms. Watts and Jessica lived with Doug Myers. The petitioner was a friend of Doug Myers. The petitioner told Myers' wife (Shirley Humphrey) that Ms. Watts was "stepping on toes".[3] Docket Entry No.23-10 at pg.151. When questioned by an investigator (Jason Rowland) from the District Attorney's Office, the petitioner stated that Diane Watts intended to expose Doug Myers and his family as drug dealers and criminals on the morning she was murdered. Docket Entry No.23-9 at pgs.8-9. Doug Myers' mother, Clementine, was overheard threatening Ms. Watts. *Id.* at pg.35.

---

[3] At the time of the fire, the petitioner was living with Shirley Humphrey, who was married to Doug Myers, while Doug Myers was living with Diane Watts, one of the victims.

The petitioner admitted to witnesses that he was at the Watts' home just prior to the murders. *Id.* at pg.210; Docket Entry No.23-10 at pg.143. Days before the fire, the petitioner bought gasoline in cans and placed them in the back of his truck. *Id.* at pg.17. He told another witness that he had been watching a house. When questioned about it, the petitioner said "yeah, there's a bitch we're going to burn out." Docket Entry No.23-10 at pgs.131-132.

The petitioner admitted to his girlfriend that his role in the murders was "to clean it up". Docket Entry No.23-9 at pgs.16-17. Following the killings, Clementine Myers gave the petitioner $900. Docket Entry No.23-10 at pgs.171-173. The petitioner asked his girlfriend to burn some of the clothes he had been wearing the night of the fire. *Id.* at pg.162.

The evidence against the petitioner was wholly circumstantial. Nevertheless, circumstantial evidence may be sufficient to support a conviction. Durr v. Mitchell, 487 F.3d 423,449 (6th Cir.2007). From the evidence presented at trial, any reasonable juror could have found that the petitioner was aware that others intended to kill Diane Watts and that he set her home afire to destroy any evidence of the crime. For that reason, the evidence was sufficient and this claim has no merit.

### 3B) Failure to Instruct the Jury

The petitioner claims that the trial judge erred when he refused to instruct the jury as to an inadequate crime scene

investigation and the negligent preservation of evidence (Claim No.5). More specifically, the petitioner contends that the removal of the victims' bodies from the house by firefighters prior to the arrival of law enforcement officers tainted the crime scene and prevented him from discovering exculpatory evidence.

Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must possess both an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. California v. Trombetta, 467 U.S. 479,488-489 (1984). Unless a criminal defendant can show bad faith on the part of the State, the failure to preserve potentially useful evidence does not offend the Constitution. Arizona v. Youngblood, 488 U.S. 51,58 (1988).

In this regard, the firefighters who removed the victims' bodies from the scene were acting in good faith and according to normal procedure for that time. There is no suggestion in the record that the victims' bodies were removed from the burning home in an effort to conceal or destroy exculpatory evidence. As a consequence, the trial judge did not err by refusing to instruct the jury as to inadequate crime scene investigation and the

negligent preservation of evidence.

**3C) Ineffective Assistance of Counsel**

The petitioner's final three claims (Claim Nos.7a,b and d) allege instances in which counsel's representation was ineffective. The Sixth Amendment provides that a criminal defendant is entitled to the effective assistance of counsel. <u>McMann v. Richardson</u>, 379 U.S. 759, 771 (1970). To establish a violation of this right, the petitioner bears the burden of pleading and proving that his attorney's performance was in some way deficient and that the defense was prejudiced as a result of the deficiency. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Prejudice arises when there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 466 U.S. 694. When considering such a claim, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. <u>Mallett v. United States</u>, 334 F.3d 491, 497 (6th Cir. 2003).

The petitioner alleges that counsel was ineffective for failing to seek a sequestration of the jury (Claim No.7a). The possibility that jurors might be tainted by publicity arising from this case was acknowledged by defense counsel when he filed a motion with the court for a change of venue. The motion was granted and the case was moved from Warren County to Putnam County for trial. Docket Entry No.23-3 at pg.74.

At the post-conviction evidentiary hearing, counsel explained that, as a matter of strategy, he decided not to have the jury sequestered. He felt that by allowing the jurors to return home each night, they would be happier and better rested, to the petitioner's advantage. Docket Entry No.24-15 at pg.43. The petitioner agreed with counsel on this point. *Id.* at pgs.54,102.

A motion to limit statements to the news media about the case was granted. Docket Entry No.23-2 at pgs.9-11. The jurors came from Putnam County rather than Warren County where the crimes were committed. The record shows that the jurors were admonished before every break not to discuss the case with anyone, not to listen to news reports or read the newspaper. Upon returning after the breaks, the jurors were questioned to ensure that they had not been improperly tainted during the break. Moreover, the petitioner presented no proof whatsoever that he had been prejudiced by the failure to sequester the jury. As a consequence, the petitioner has failed to show that counsel was deficient for not seeking the sequestration of the jury.

The petitioner also claims that counsel was ineffective for not objecting to the application of certain aggravating factors to enhance his sentences (Claim No.7b).

The constitutional guarantee of a jury trial proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior

14

conviction, not found by the jury or admitted by the defendant. Apprendi v. New Jersey, 530 U.S. 466,490 (2000).

The petitioner was sentenced on October 22, 2001. Docket Entry No.24-7. The trial judge did apply aggravating factors not found by the jury to enhance the petitioner's sentences. *Id.* at pgs.84-90.[4]

The appropriate sentencing range for petitioner's facilitation convictions was twelve (12) to twenty (20) years. The petitioner received the maximum sentence within this range. The sentencing range for the aggravated arson conviction was fifteen (15) to twenty five (25) years. The petitioner also received the maximum sentence allowed within this range. *Id.* at pg.83. Thus, at the time that the petitioner was sentenced, it did not appear that Apprendi came into play because the petitioner had been sentenced within the maximum range allowed by law.

In 2004, however, the Supreme Court defined what was meant by the "statutory maximum". The relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but rather the maximum he may impose without any additional findings. Blakely v. Washington, 542 U.S. 296,303-04 (2004). Under such a definition, the petitioner may have received a sentence that

---

[4] At his sentencing hearing, the petitioner admitted that he used illegal drugs, Docket Entry No.24-7 at pg.49, that he was involved in the "drug business", *Id.* at pg.57, and that he had lied at trial. *Id.* at pg.46. These admissions, in addition to petitioner's prior convictions, were also used to enhance the petitioner's sentences.

was constitutionally offensive. Nevertheless, the petitioner was sentenced three years before the <u>Blakeley</u> decision became the law of the land. Petitioner's attorney could not be held deficient for failing to object to sentences which, according to the law at that time, appeared to be proper. Therefore, counsel's failure to raise a <u>Blakeley</u> objection to the sentences did not deprive the petitioner of his Sixth Amendment right to counsel.

Finally, the petitioner asserts that the cumulative effect of his attorney's errors served to deprive him of the effective assistance of counsel (Claim No.7d). Because there has been no showing that counsel was deficient in any way, this claim has no merit.

### D. Conclusion

For the reasons noted above, the petitioner has failed to state a claim upon which habeas corpus relief can be granted. Therefore, an appropriate order will be entered granting the respondent's Motion to Dismiss.

_____
Aleta A. Trauger
United States District Judge